(No. 14097.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PATRICK T. STAPLETON, Plaintiff in Error.

*Opinion filed December 22, 1921.*

1. CRIMINAL LAW—*the mere admission of incriminating facts is not a confession—instructions.* A confession is a voluntary declaration of a person charged with crime of his agency or participation in the crime and is not merely a declaration or admission of facts criminating in their nature or tending to show guilt, and where from their recollection police officers testify to certain statements made by the defendant which do not amount to a confession, it is prejudicial error to give the jury instructions characterizing such statements as a confession.

2. SAME—*apparent necessity will justify self-defense.* Actual and positive danger is not indispensable to justify self-defense, but if the circumstances are such as to induce in the accused a reasonable and well-grounded belief that he is actually in present danger of losing his life or receiving great bodily harm he will be justified in defending himself, whether the danger is real or only apparent.

3. SAME—*jury should not be instructed that self-defense must be apparently necessary from a normal process of reasoning.* It is not the rule in self-defense that the danger must appear to be urgent and pressing as a logical sequence of reasoning in conformity to normal standards, but in determining the extent of the danger one must judge at the time, as a reasonable man, from appearances and circumstances, whether he is in imminent danger of losing his life or receiving great bodily harm, and it. is error to instruct the jury that self-defense must be apparently necessary "according to normal reasoning."

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THOMAS TAYLOR, JR., Judge, presiding.

FRANCIS BORRELLI, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (HENRY T. CHACE, JR., EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Patrick T. Stapleton, plaintiff in error, was indicted by the grand jury of Cook county for the murder of John Walsh. Upon a trial in the criminal court there was a verdict finding him guilty and fixing his punishment at confinement for twenty years in the State penitentiary at Joliet, and judgment was entered on the verdict.

After midnight of October 11, 1919, the defendant, with John Walsh and others, was in a saloon at Forty-fifth street and Wentworth avenue, in Chicago. There was a quarrel there between some of them about change left on the bar in paying for drinks. It was one o'clock in the morning of the 12th when the saloon-keeper told them that he was going to close the place and if they wanted to fight he would call the police, and they were all turned out of the saloon. When they got out of the saloon the defendant and Walsh had a fight, which was stopped by a policeman. They started in the direction of the defendant's home, at Forty-fifth street and Normal avenue. Walsh lived at Forty-third place and Wallace street, and they were not going toward his home. When they reached a point on Forty-fifth street where a railroad crosses the street at an elevation there was another fight and Walsh knocked the defendant down and kicked him. The defendant ran to his home and procured a revolver and returned and met the others. He and Walsh talked a few minutes, apparently in a friendly way,—at least on the part of the defendant, who was not quarreling or attempting in any way to provoke a quarrel,—and after talking in that way a short time the defendant drew the revolver, shot Walsh and killed him. The defendant and three others picked up the body and carried it to the defendant's home, where it was laid on the floor and he had a doctor called.

The defendant testified that when the fight started in the saloon he said to Walsh that they were good friends

and asked him why he did not go home, but Walsh said he would see him outside, and when they got outside Walsh struck him; that when they were under the viaduct Walsh knocked him down and kicked him three or four times; that he got up and ran home, going west on Forty-fifth street and south on Normal; that he got his revolver and came back and met the others, who were following him; that he walked up to Walsh and talked with him a few minutes and said that they had always been good friends and advised him to go home and they would be good friends again in the morning; that someone in the crowd said, "Get him now!" and Walsh put his hand in his right-hand coat pocket; that he stepped back about a foot and Walsh pulled out his revolver, and he pulled out his revolver to defend himself and fired the shot; that when he shot, Walsh said he would either get the defendant or the defendant would get him; that Walsh was pulling the gun out of his pocket and the defendant honestly believed he was in actual danger of being killed or receiving bodily harm; that he was awful sorry, because they were good friends, and that he, with three others, carried the body to his house and told a woman to call a doctor.

Walter Bowen, who was with the party and was called by the court as a witness, testified that while the body of Walsh was lying on the floor in defendant's home the witness reached down and took a gun out of Walsh's right-hand coat pocket, ran down the stairs and took it into the alley and threw it underneath a barn; that he then went to a wake, where he had been with Walsh the previous evening before going to the saloon; that it had been raining while the gun was under the barn and it got rusty, and he took it from under the barn and gave it to the State's attorney. The revolver was identified and had two cartridges in it.

There is an assignment of error on the giving of two instructions asked by the People relating to confessions, and

to understand the question raised it is necessary to recite the evidence ·as to the statements made by the defendant upon which the instructions were based.

After the shooting policemen came to the front and rear of defendant's residence and some of them entered and asked who did the shooting, and the defendant said that he did. Being asked where the revolver was, he went to the bed-room, took it from under the mattress and gave it to the police and expressed regret for what he had done. He was arrested and taken to the police station and was interrogated as to the homicide, and questions and answers were written down and signed by him. The written statement was admitted in evidence after several policemen had testified to their recollection of what the defendant said. The trial was in January, 1921, and the recollection of the policemen was not very clear, and one of them, who said that he had charge of the particular case, also said that it had been so long ago that he could not remember the statement. Malachy Murphy, one of the policemen, testified that the defendant, when he made the statement at the police station, said that he did not know what he shot Walsh for; that he was sorry, for he was a good friend and they had been friends for years; that he told about a quarrel, and after they left the saloon that he was struck by Walsh; that he said something about "someone was going to get him;" that Walsh was coming down the street after him, following him, and he went home to get his gun; that Walsh had a revolver in his hand and that he fired in self-defense; that he was sorry that he shot Walsh, and afterward helped to take Walsh to his home and gave him some water to drink and told someone to call a doctor. Thomas Reilly, another policeman, testified to taking the statement of the defendant, and said that the defendant told him he had been a friend with Walsh a long time; that they had a quarrel or argument and fight; that he had seen Walsh with a gun and that he saw a revolver in Walsh's hand.

John F. Claussen, another policeman, testified that the defendant said in closing up the saloon there was quite a fight and some argument out on the street; that he left and went back on Forty-fifth street, and when he got under the elevation one of his friends was hurt by somebody; that he went away, and, if the witness was not mistaken, said that somebody hurt him and he went home and got his gun and came out again and met Walsh about Forty-fifth street and Normal avenue; that Walsh had a gun in his hand and the defendant shot him, and that someone had told him previous to that evening that Walsh was going to get him; that he saw a gun in Walsh's hand and saw Walsh draw a gun, and when he took his hand out of his pocket that was when he fired at Walsh. William H. Workman, a detective sergeant, testified to making the statement at the police station, and that the defendant said that he and Walsh had an argument; that the defendant left them and ran along the sidewalk, and when he got within five feet of Walsh he raised the gun and fired one shot; that he chased some of the others and never tried to find out who they were and they never told. He also said in a previous statement that he saw a gun in Walsh's hand, and said something about someone saying, "There he is! Get him!" In the statement reduced to writing and signed by the defendant he said that when he was struck he got up and ran home and looked around and there was a whole gang behind him; that he got the gun and fired the shot; that Walsh was a few feet from him when he fired; that he had a revolver in his hand and he passed the remark he was going to get the defendant; that he did not give Walsh a chance to use his revolver but he shot first.

At the instance of the People the court gave to the jury the following instructions:

5. "The court instructs the jury, as a matter of law, that a free and voluntary confession by a person accused of crime, whether made before or after arrest, if proved be-

yond a reasonable doubt, and if there is evidence that the crime has been committed by someone, may be sufficient to warrant a conviction without any other corroboration."

9. "The court instructs the jury, as a matter of law, that where the *corpus delicti* has been proven, beyond a reasonable doubt, independently of the confession, and the proof satisfies the jury that the confession is true, it is sufficient under the rules of evidence in this State to justify a verdict of guilty, if the jury believe, beyond a reasonable doubt, that such confession was not obtained by reason of threats or promises made by someone in authority."

There was nothing to which these instructions could apply except the testimony of the policemen and the written statement which the court advised the jury would justify a verdict of guilty. Neither the statement as testified to by the policemen nor as written down and signed by the defendant amounted to a confession, which is a voluntary declaration by a person charged with crime of his agency or participation in the crime, and not merely a declaration or admission of facts criminating in their nature or tending to show guilt. It is limited in its meaning to the commission of a criminal act and is an acknowledgment or admission of participation in it. (1 Greenleaf on Evidence, sec. 170; 6 Am. & Eng. Ency. of Law,—2d ed.—520; 12 Cyc. 459.) In *Johnson* v. *People,* 197 Ill. 48, and *Michaels* v. *People,* 208 id. 603, there was evidence of statements by the defendants proper to be considered on the question of guilt or innocence, but a confession is to be distinguished from an admission, and it was held that such statements could not be distorted into confessions of guilt. The giving of these instructions and characterizing the statements of the defendant as a confession was most serious and prejudicial error.

The defense interposed at the trial was that the killing of Walsh was justifiable, in self-defense, and on that question the court gave the following instruction:

11. "The court instructs the jury in the language of the statute, that if a person kill another in self-defense, it must appear that the danger was so urgent and pressing that, in order to save his own life or to prevent his receiving great bodily harm, the killing of the other was under the circumstances, and according to normal reasoning, apparently necessary; and it must appear also that the person killed was the assailant or that the slayer had really, and in good faith, endeavored to decline any further struggle before the mortal blow was given."

The law of self-defense is a law of necessity, which must be either real or apparently real, so that there is a reasonable apprehension of loss of life or great bodily harm and it appears that there is no other alternative than killing the assailant. Actual and positive danger is not indispensable to justify self-defense, but if the circumstances are such as to induce in the accused a reasonable and well-grounded belief that he is actually in present danger of losing his life or receiving great bodily harm he will be justified in defending himself, whether the danger is real or only apparent. (*Kinney* v. *People,* 108 Ill. 519; *Kota* v. *People,* 136 id. 655; *Lyons* v. *People,* 137 id. 602; *Steiner* v. *People,* 187 id. 244; *People* v. *Williams,* 240 id. 633.) The fear upon which a person may act by taking the life of another is such fear as a reasonable person would entertain from the circumstances surrounding him at the time. The right is based upon appearances and circumstances sufficient to excite the fears of a reasonable person and the act must be the result of such reasonable fears, but this instruction made it a condition that the killing of Walsh was under the circumstances and according to normal reasoning apparently necessary. That was setting up a standard not recognized by the law by advising the jury that the danger must be apparently real according to a normal process of reasoning. It is not the rule that the danger must appear to be urgent and pressing as a logical sequence of

reasoning in conformity to normal standards. In determining the extent of the danger one must judge at the time, from appearances and circumstances, whether he is in imminent danger of losing his life or receiving great bodily harm, and his decision must be that of a reasonable person in like circumstances. The court erred in giving the instruction.

There are complaints of some other things which are not likely to occur in another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*