(No. 32323.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK ALLEN, Plaintiff in Error.

*Opinion filed September 17, 1952.*

C. E. TATE, and ROBERT C. SUMMERS, both of Champaign, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and H. CARROLL BAYLER, State's Attorney, of Louisville, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Defendant, Frank Allen, has sued out this writ of error to review a judgment of the circuit court of Clay County entered on a jury verdict finding him guilty of the crime of taking indecent liberties with a child under fifteen years of age.

The several issues presented by this appeal include: the propriety of the trial court's denial of defendant's motion for a change of venue on the ground of prejudice of the inhabitants of the county; the sufficiency of the proof of venue as alleged in the indictment; whether defendant's written statement constituted a confession; the propriety of the court's refusal to give a particular instruction offered by defendant; the sufficiency of the evidence of guilt; and the legal effect of certain remarks of the State's Attorney, and of the separation of the jurors.

From the record it appears that the indictment consisted of one count, which, in substance, charged defendant with taking indecent liberties with a female under the age of fifteen years. (Ill. Rev. Stat. 1951, chap. 38, par. 109.) Defendant entered a plea of not guilty after his motion to quash the indictment was overruled, and then filed a motion for a change of venue, alleging the prejudice of the inhabitants of the county. The application was supported by affidavits from his counsel, and from some fifty residents of Clay County. The People filed a denial of the facts alleged in the motion, and supported the denial by some 55 counteraffidavits, also from persons living in the county. The court denied defendant's motion, and the cause was set for trial. In the selection of the jury, which consumed a little over one day, defendant's counsel did not find it necessary to exhaust all of his peremptory challenges.

A fair summary of the evidence which is practically uncontradicted reveals that at about 2:30 P.M. on May 9, 1951, the complaining witness, an eleven-year-old girl, upon whom the improper acts were allegedly perpetrated, was

walking home from the Iola Consolidated School which she attended. She was stopped by defendant, a 63-year-old farmhand, who was driving a bluish black five-passenger Chevrolet, in front of the Pemberton house, a few blocks northwest of the school. One of the witnesses testified that he saw defendant parked in front of this particular house, and another witness saw defendant driving in the vicinity between the farm on which he worked, which was just west of Iola, and the town.

The child testified that she started to run, but defendant grabbed her and put her into the car; that they drove to the corner near some woods; that she made another attempt to escape, but defendant pulled her back into the car; that there were further struggles when defendant took her into the woods; that she screamed several times, but he made her stop; that defendant tore her dress, removed her panties, and played with her private parts until she escaped from him and started home.

Two witnesses saw the child with her dress torn, crying and walking in the direction of her home, about a mile from the Pemberton house. The school principal testified that the child wore that particular dress, introduced as People's exhibit 2, to school that day, but it was not torn at that time.

The sheriff of Clay County testified that pursuant to a call to investigate an alleged occurrence near Iola, he and his deputy went to the west edge of the village, near a "T" road, where he saw some tracks leading west. He then drove the complaining witness and her mother to this area and went into the wooded section where he found the child's panties, identified as People's exhibit 1. The following day the sheriff and two men drove to Edgewood, a town just west of Iola. They saw a car similar to that described by the child parked on the north side of the street, and when defendant, who had been walking toward the

car, saw them, he walked back up the sidewalk and attempted to flee.

The sheriff and the deputy both testified to conversations with defendant in which he admitted having picked up the child, but denied having forced her to get into the car. He claimed he talked to her as they drove to the "T" road, and then left the car and went into the woods where she took off her panties and he played with her for a while. He asked her to lie down, but she jerked loose and ran away. Defendant then returned to the car and drove home to Edgewood.

Defendant, after being apprised of his rights by the State's Attorney, signed the statement introduced as People's exhibit 3, in which he admitted that "She was going to show it to me for some money. She pulled her panties down, pulled them plum off. I played with her a little bit. Had hold of her arm. She said if I wasn't going to give her any money she was going home. She jerked loose and started home." Defendant explained later that he played with her "like I play with all children."

On the stand defendant denied that he had molested or attempted to molest the complaining witness and that while his signature was on People's exhibit 3, he did not recall all that had taken place when he made the statement.

At the close of all the evidence the defense renewed a motion for a directed verdict, which was denied. The jury returned a verdict finding defendant guilty as charged and the court, after overruling a motion for a new trial, sentenced defendant to the Illinois penitentiary for a minimum term of one year and a maximum term of two years.

In determining the propriety of the judgment we shall consider first whether the court erred in denying defendant's motion for a change of venue. It is established that granting a change of venue on account of the prejudice of the inhabitants of the county rests in the sound discretion

of the trial court. (*People* v. *Witte,* 350 Ill. 558; *People* v. *Cobb,* 343 Ill. 78.) This discretion, however, may not be arbitrarily exercised, and is subject to review by the courts in case of its abuse. (*People* v. *Pfanschmidt,* 262 Ill. 411.) Abuse of such discretion may arise not only from a decision based upon whim or caprice, or from a bad motive, but also from an unjust exercise of discretion under the circumstances. The inquiry of the court on such a motion is directed to a question of fact—whether there is reasonable ground for fear that prejudice actually exists and that defendant will not receive a fair and impartial trial. *People* v. *Katz,* 356 Ill. 440; *People* v. *Meyers,* 381 Ill. 156.

In support of his motion, defendant, as hereinbefore noted, offered the affidavits of his attorney and fifty persons residing in the county, attesting that he would not receive a fair trial because they believed that the inhabitants of the county were prejudiced against him. The People filed some 55 counteraffidavits made by persons living in the county who denied the existence of any prevailing prejudice which would prevent defendant from receiving a fair trial.

It is evident that a decision on a motion for change of venue cannot be predicated upon the number of affidavits on each side. (*People* v. *Pfanschmidt,* 262 Ill. 411.) Nor does the mere filing of such affidavits alleging prejudice warrant *ipso facto* a change of venue, for such an interpretation would set to naught the fundamental concept of trial by jury in the county where the alleged crime occurred. It was for the trial judge to evaluate the integrity of the affiants and the sincerity of the affidavits in the light of the nature of the crime and the circumstances prevailing in the county, and then ascertain whether there was reasonable ground for believing defendant would not get a fair trial.

There is nothing contained in the record which could substantiate such an assumption. The nature of the alleged

crime would be equally repulsive in any county. There is no showing that defendant's counsel had difficulty in obtaining a satisfactory jury; in fact, counsel did not utilize all his peremptory challenges in the course of selecting the jury, which took a little over a day. The ease in selecting a jury was stressed in *People* v. *Murphy,* 276 Ill. 304, where the court held the denial of a motion for change of venue was proper. Nor are there any other facts presented herein from which it could be inferred that defendant could not have had a fair trial. There was no direct evidence of threats made against defendant, or publications denouncing him; nor was he removed from one jail to another to avoid lynching, as the defendant was in *People* v. *Arthur,* 314 Ill. 296.

In support of his contention, defendant cites *People* v. *Pfanschmidt,* 262 Ill. 411, where the denial of a motion for change of venue was held to be error. In that case the atrociousness of the crime of murdering four people, dismembering one of the bodies, and burning down the whole house, had aroused intense interest and bitter feeling toward the defendant, so that large numbers of persons had publicly expressed belief in his guilt and advocated his death. His attorneys had been denounced, hundreds of people visited the scene of the crime, some 4000 people attended the sale of the property and effects of one of the deceased persons, the newspapers published the cost of a change of venue to the taxpayers, and the sheriff had stated that a number of persons had asked for the privilege of springing the trap at defendant's execution. The contrast of the crimes and the prevailing circumstances between the cases is apparent, hence the *Pfanschmidt case* cannot be deemed analogous or determinative.

Inasmuch as it does not appear from the record that the denial of defendant's motion for a change of venue by the circuit court was predicated upon whim, bad motive, or an unjust exercise of discretion, there was no abuse of

discretion, and the ruling of the court cannot constitute a legitimate ground for reversal.

Defendant urges further that the evidence does not properly establish proof of venue as charged in the indictment. It is uncontroverted that the charge that a crime was committed in a particular county is a material averment and must be proved to sustain a conviction. (*People* v. *Strook*, 347 Ill. 460; *People* v. *O'Gara*, 271 Ill. 138.) However, the venue of an offense may be proved by circumstantial evidence, like any other fact in a criminal case. *People* v. *Long*, 407 Ill. 210; *People* v. *Hornaday*, 400 Ill. 361.

An examination of the authorities on this issue reveals that in many of the earlier decisions the courts adhered to a more technical view and insisted upon positive and strict proof of venue as precisely alleged. Thus, in *Moore* v. *People*, 150 Ill. 405, the court held that where an indictment charged the commission of rape in Madison County, proof that it was committed in Upper Alton, without showing in which county or State Upper Alton was situated, was not sufficient to warrant a conviction. In *People* v. *Long*, 407 Ill. 210, however, the court followed a more practical and realistic approach. After reiterating the general rule that venue may be proved by circumstantial evidence, and without referring to the *Moore case*, the court held that it could take judicial notice that a city is located in a certain county, hence proof that a crime was committed in the city of Taylorville, and that law enforcement officials of Christian County participated in defendant's arrest, was sufficient to establish proper venue in Christian County where the trial was held.

To eliminate ambiguity in the law, any judicial determination inconsistent with the rule promulgated in the *Long case*, which shall be followed herein, shall be deemed to be expressly overruled.

From the testimony in the instant case, it was established that the alleged crime was committed some three

fourths of a mile north and 1¼ miles west of the village of Iola, in Larkinsburg Township, and that the sheriff and deputy of Clay County were called to investigate the crime, and made the arrest of defendant. Although in the *Long case*, the crime occurred within the municipality, inasmuch as the distance and direction from the municipality of Iola were established, and the county and township boundaries are public records, and since Clay County officials made the arrest, under the determination of the *Long case* the evidence herein was sufficient to leave no doubt that the alleged crime was committed in the county alleged in the indictment and where the trial took place.

The case at bar is distinguishable from *People* v. *O'Gara*, 347 Ill. 460, and *People* v. *Strook*, 271 Ill. 138, cited by defendant, inasmuch as the evidence of venue therein referred only to the street and number and not to the town itself. Nor was there the additional evidence of the participation of the county officials as in the instant case. The evidence herein was also more explicit than in *People* v. *Biella*, 374 Ill. 87, where the court held the facts that the coroner's physician of the particular county conducted the *post mortem* and that a Chicago policeman arrested defendant were insufficient to establish proof of venue in Cook County. It is evident, therefore, that not only were the facts in these cases distinguishable from the instant case, but those decisions were rendered prior to the *Long* decision.

Defendant further contends that the court erred in admitting in evidence the confession of defendant, since it does not constitute an admission that he participated in the crime as charged in the indictment itself or any other crime.

A confession has been defined as a "direct acknowledgment of guilt on the part of the accused, either by a statement of the details of the crime, or an admission of the ultimate fact." (*People* v. *Nitti*, 312 Ill. 73, 92.) In the alleged confession, defendant stated in writing that "She

was going to show it to me for some money. She pulled her panties down, pulled them plum off. I played with her a little bit. Had hold of her arm. She said if I wasn't going to give her any money she was going home. She jerked loose and started home." The unmistakable meaning of the statement, viewed in its entirety rather than as isolated phrases, as defendant suggests to this court, constitutes an admission of the ultimate fact of taking indecent liberties with a minor under the statute (Ill. Rev. Stat. 1951, chap. 38, par. 109,) as charged in the indictment. Hence, the circuit court did not err in admitting the statement in evidence as a confession.

Defendant further urges that the trial court erred in refusing to instruct the jury that if "they believe the Defendant, Frank Allen, signed a confession to some act not specifically charged in the indictment in this case or to some other unrelated act, then the Jury should not consider it a confession to the crime charged in the indictment in this case."

As hereinbefore noted, the conduct referred to in the confession clearly related to the crime charged in the indictment, hence the instruction offered was not predicated upon any evidence, but was merely a gratuitous assumption, having no bearing on the case, and it was not error to refuse to give it to the jury. *People* v. *Johnson,* 343 Ill. 273, 277.

Defendant also contends that the testimony of the complaining witness, a child of eleven, should have been corroborated, and in the absence of such corroboration the evidence was insufficient to sustain the verdict of the jury. Examination of the record reveals that the material portion of her testimony was in fact corroborated, not only by defendant's admissions but by the testimony of other witnesses. She was seen walking toward home from the wooded area where the crime allegedly occurred, crying and wearing the torn dress identified as the dress she wore

to school, but which was not then torn; her panties had been found at the scene of the crime; and defendant had been seen by two witnesses in his car in the area where he picked up the child.

The positive testimony of the eleven-year-old child herein, where defendant submitted no alibi evidence as to his whereabouts at the time of the crime, is considerably stronger and more persuasive than that of the six-year-old child which was held sufficient in *People* v. *Ulrich*, 411 Ill. 316. There was no confession therein and the defendant's denial of the crime was corroborated by his alibi; nevertheless, the court held the child's testimony sufficiently corroborated where she was seen leaving the building crying after the alleged commission of the crime upon her, and a witness claimed he saw the defendant in the building about an hour before.

Moreover, this court is not justified in setting aside a verdict of guilty unless the testimony is so palpably conflicting as to indicate that the verdict was the result of passion or prejudice, or that defendant has not been proved guilty beyond a reasonable doubt. *People* v. *Ulrich*, 411 Ill. 316.

The alleged improper remarks of the State's Attorney would not constitute grounds for reversal unless it appeared that defendant had been injured or prejudiced thereby. (*People* v. *Jenko*, 410 Ill. 479.) In view of the evidence of defendant's guilt, it does not appear that the allegedly improper inferences from the State's Attorney's over-zealous remarks to the jury affected the outcome of the cause. Moreover, inasmuch as those remarks were not objected to at the time they were made, and the ruling thereon preserved in a bill of exceptions, this court may not properly review that issue. *People* v. *Ladas*, 374 Ill. 419.

Nor do we deem the fact that the jury was allowed to go to a public restaurant before the verdict was submitted constitutes reversible error. For the conduct of the jury

to constitute grounds for setting aside the verdict, it is necessary that a showing be made that the defendant was prejudiced by such separation. (*People* v. *Fisher*, 340 Ill. 216, 243.) No such evidence of prejudice was offered herein. The instant case is clearly distinguishable on this issue from *People* v. *Casino*, 295 Ill. 204, cited by defendant, where the jury, on the instruction of the court, had its full liberty during all the recesses of the court to separate and apparently go where it pleased, unaccompanied at any time by an officer. Hence, that case cannot be deemed a proper precedent under the circumstances herein.

On the basis of the foregoing analysis, it is our considered judgment that no prejudicial error intervened in the trial of this cause. Therefore, the judgment entered by that court on the verdict of the jury, which found defendant guilty as alleged in the indictment, is affirmed.

*Judgment affirmed.*