THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS ELLIS, Defendant-Appellant.

(No. 12578;

Fourth District—September 4, 1975.

CRAVEN, J., dissenting.

Richard J. Wilson and Bruce Stratton, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (James R. Coryell, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Defendant, Dennis Ellis, appeals from his conviction following a jury trial for the offense of burglary and from a sentence imposed of 1 to 3 years' imprisonment. The only issue raised is whether the trial court erred in giving a confession instruction to the jury.

On July 1, 1973, Jim Putnam and Associates, a Decatur, Illinois, commercial art firm, was broken into and a composer typewriter was stolen.

Gerald Hunk, a police detective, testified that he advised defendant of his *Miranda* rights, and his testimony regarding the interrogation was as follows:

"Q. What did Mr. Ellis tell you?

A. He stated that he was at his home at 430 West Marietta, I

believe, the night of July 1st, when a person he knows as Gary Clay came over to the house; and he was telling Gary Clay about this particular office building which was Putnam and Associates, he was telling him that this was an easy hit, an easy place for a burglary. He said that he had learned this from people over on the east end of town, which he was unable to identify either by name or address, and he said that this happened about two hours prior to himself being arrested. He said that this Gary Clay left for a while and returned to the same address, and he asked Dennis Ellis to go with him to burlgarize this particular office building, and he said that he told Clay that he would not go along with him. Clay left the house, went across the street and went in the back door of this particular office building. He said that he later walked over to the back door, as he was, quote, drawn to the place, and he said he stood by the back fence while Gary Clay was inside. He said while standing there he saw a black and white police car coming down the street, and about this same time Gary Clay came out of the office building carrying a typewriter. He told Gary at that time, quote, you're busted, end of quote, and he himself stood by a tree as the patrol car went by. After this particular patrol car went by he ran over to his house across the street, this was Ellis, and he said that he ran inside the house, took off his trousers and began cooking some spaghetti that he had on the stove. He said he did this to divert the—if the police came, and it would look like he hadn't been across the street or been involved in the burglary. He said later police officers did come in the house, ask for him, and later did arrest him for burglary. He said he gave the officers a hard time during this, also to divert, that he was not involved in the burglary itself. He said at that time he was taken down to police headquarters and was booked for burglary and incarcerated.

Q. Did he tell you anything else about his involvement in this?

A. He was asked what his role in this particular burglary was, and he stated that if standing in the back door while Clay was inside was considered a look-out then this was what he was."

Hunk stated on cross-examination that either he or another officer had first used the term lookout during the interrogation. At the close of all the evidence the court gave to the jury, over defendant's objection, an IPI Criminal Instruction No. 3.07 which read as follows:

"You have before you evidence that the defendant confessed that he committed the crime charged in the indictment. It is for you

to determine what weight should be given to the confession. In determining the weight to be given to a confession, you should consider all of the circumstances under which it was made."

An accountability instruction was also given. The jury returned a verdict of guilty of burglary, and defendant was later sentenced to 1 to 3 years' imprisonment.

Defendant contends that the trial court erred in giving the confession instruction because the statements given were exculpatory. We do not agree. A confession is a "direct acknowledgment of guilt on the part of the accused, either by a statement of the details of the crime or an admission of the ultimate fact." (*People v. Nitti*, 312 Ill. 73, 92, 143 N.E. 448, 455; *People v. Allen*, 413 Ill. 69, 107 N.E.2d 826, 830.) We find the statement here to be a direct acknowledgment by the defendant of his guilt, and find the language of Justice Smith in *People v. Rollins*, 119 Ill. App.2d 116, 131-32, 255 N.E.2d 471, 478, to be extremely appropriate here:

"Defendant argues that there was *no* confession—rather, what he told the police was a 'statement,' and that a statement is not an acknowledgment of guilt, whereas a confession is. This differentiation is correct. A confession is a comprehensive admission of guilt or of facts which necessarily and directly imply guilt. Defendant says that what he told the police was not a confession because he told the officer that he stood by while others entered the house and removed the television. But as we have seen from our discussion of accountability, one can stand off in the wings, as it were, and yet be held accountable for the action center stage. What he told the police was indeed a confession as we have just defined it. There is a reasonable inference from what he told the police officer that he committed the crime with which he was charged. *That his answers were not couched in the terms of the statutes on accountability or burglary is hardly remarkable—it would have been remarkable if they had been. The facts he recounted to the police reasonably and directly implied guilt, hence the characterization was proper.*" (Emphasis added.)

In the instant case then the statements of defendant that he told Clay that the Putnam office was an easy hit, the statements that place him outside the office at the time of the burglary, the statements that he was a lookout, and the statements that he tried to hide his involvement from the police amount to voluntary declarations of his agency and participation in the crime. Hence, it was not error for the trial court to give the confession instruction.

The State also introduced the testimony of N. O. Primm. Primm was

an eyewitness to the burglary. While Primm did not identify the defendant Ellis, and his confederate Clay by name, his description of the two by size and build, taken together with Ellis's statements to the police establishes whom he observed and what each was doing. Primm's testimony was as follows: He resided across the street from the burglarized premises, from which an I.B.M. composer typewriter was taken during the commission of the burglary, and within view of the home or apartment in which Ellis resided. The premises were burglarized twice during the evening. Between 8 and 9 p.m., Primm observed that the rear door of the building was open and called the owner's home. The owner's wife, Betty Jo Putnam came to the scene, as did Primm and Decatur police officers. Mrs. Putnam (who also testified) entered the building, noted that several of her husband's machines were missing. The I.B.M. typewriter was still there. Primm then secured the rear door. He used heavy wire which he put around the knob and around a hinge "* * * so it couldn't be opened easily."

Approximately 1 hour later Primm, from a distance of approximately 100 feet, with the scene illuminated by a street light, observed Ellis and Clay arrive together at the rear door of the Putnam building. They were "* * * apparently trying to get the back door open." He saw a light flash and saw the door open. Ellis then entered the building, remained inside for 2 or 3 minutes and emerged carrying what appeared to be a typewriter. Clay stood about 8 to 10 feet from the rear door, and outside the building, while Ellis was inside. The two then fled the premises, Ellis carrying the typewriter. He set the typewriter on the sidewalk between some trees where it was later recoverd by the police after Primm reported this. Clay ran down the street, Ellis entered his residence where both Clay and Ellis were arrested a short time later. Ellis' participation in the burglary was clearly established beyond a reasonable doubt.

For the reasons stated above the judgment of the circuit court of Macon County is hereby affirmed.

Judgment affirmed.

GREEN, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

I cannot accept the majority's characterization of Dennis Ellis' statement as a "confession."

Illinois Supreme Court cases defining "confessions" have set a rather strict standard for that term. In *People v. Stapleton*, 300 Ill. 471, 133 N.E. 224, the court established that a statement which does not acknowledge the commission of a criminal act is not a confession. In that case, several

policemen testified as to their recollection of statements defendant made shortly after a shooting. A written statement was also introduced. Each of the policemen related that, while defendant had admitted the shooting, he had testified that the victim was carrying a gun and that he believed he was in danger for his life at the time he fired the fatal shot. The court considered it "most serious and prejudicial error" that the court gave to the jury an instruction regarding confessions on the basis of these statements. (300 Ill. 471, 476.) The court said:

> "Neither the statement as testified to by the policemen nor as written down and signed by the defendant amounted to a confession, which is a voluntary declaration by a person charged with crime of his agency or participation in the crime, and not merely a declaration or admission of facts criminating in their nature or tending to show guilt. It is limited in its meaning to the commission of a criminal act and is an acknowledgment or admission of participation in it." (300 Ill. 470, 476.)

Thus, a statement which admits all the physical incidents of a crime, but contains material that is exculpatory (as was the claim of self-defense in *Stapleton*), is not a confession. A confession must be an acknowledgment of a criminal act.

In *People v. Stanton*, 16 Ill.2d 459, 158 N.E.2d 47, defendant was apprehended near the scene of a burglary and searched. The deputy found 54 cents in defendant's pocket and asked him where he got the money. Defendant replied, "Out of the register." Though this statement was not turned over to the defense on discovery, it was admitted into evidence. When defense objected on appeal that this statement was a confession which, according to the terms of the Criminal Code, was required to be furnished to the defense in advance of trial, the supreme court said:

> "A confession is a voluntary acknowledgment of guilt after the perpetration of an offense, and it does not embrace mere statements or declarations of independent facts from which guilt may be inferred, while an admission is any statement or conduct from which guilt of the crime may be inferred but from which guilt does not necessarily follow. [Citations.]
> 
> *  *  *

In the instant case, burglary was the only charge upon which the defendants were tried. The essence of the crime of burglary is breaking and entering with felonious intent. The statements attributed to Corbin did not amount to an ultimate confession of guilt because they did not necessarily establish that the defendants

broke into and entered the clubhouse." (16 Ill.2d 459, 466, 467, 158 N.E.2d 47, 51.)

Thus, it can be seen that even a statement which admits facts which are virtually tantamount to guilt is not a confession unless it includes all the elements necessary to guilt.

That same principle is expressed in *People v. Allen*, 413 Ill. 69, 107 N.E.2d 826, where defendant's statements in regard to the crime of child molesting *were* found by the court to constitute a confession. There the court said:

> "A confession has been defined as a 'direct acknowledgment of guilt on the part of the accused, either by a statement of the details of the crime, or an admission of the ultimate fact.' [Citation.] In the alleged confession, defendant stated in writing that 'She was going to show it to me for some money. She pulled her panties down, pulled them plum off. I played with her a little bit. Had hold of her arm. She said if I wasn't going to give her any money she was going home. She jerked loose and started home.' The unmistakable meaning of the statement, viewed in its entirety rather than as isolated phrases, as defendant suggests to this court, constitutes an admission of the *ultimate fact* of taking indecent liberties with a minor under the statute * * *." (Emphasis added.) 413 Ill. 69, 77-78, 107 N.E.2d 826, 830-31.

The principle that a confession must include all the elements of the crime is set out in even more specific language in *People v. Georgev*, 38 Ill.2d 165, 230 N.E.2d 851, where defendant made two very incriminating statements after his arrest. When asked to give a statement, he refused and added, "[T]he stuff was found in my possession—what more do you want?" He later told the custodian of the jail that "he [the defendant] knew he was going to prison and it was just one of those things, he was broke and needed the money and got caught at it." In ruling that the State had no obligation to surrender copies of these statements to the defense on discovery, the court said:

> "Confessions must be distinguished from admissions against interest. Jones on Evidence, 5th Ed., sec. 398 states: '* * * As the terminology is used in criminal law a "confession" must be distinguished from an "admission" of lesser import * * *. A confession out of court or an extra-judicial confession is comprehensive in its scope, * * * in that *it acknowledges all of the elements of the crime* and therefore is a confession of guilt * * *. A verbal (that is, expressed in words, oral or written) admission in criminal law, as generally understood, is different from a con-

fession in that it is not an acknowledgment of guilt but is a statement having evidentiary value in proof of an element of the offense charged.'" (Emphasis added.) 38 Ill.2d 165, 175, 230 N.E.2d 851, 857.

This court has twice expressed the same principle in recent years. In *People v. Rollins*, 119 Ill.App.2d 116, 131, 255 N.E.2d 471, 478, the court said: "A confession is a comprehensive admission of guilt or of facts which necessarily and directly imply guilt." In *People v. Koch*, 15 Ill.App.3d 386, 389, 304 N.E.2d 482, 484, this court said: "A confession is a voluntary acknowledgment of guilt *which is comprehensive in scope and includes all the elements of a crime*, whereas an oral or written admission is not an acknowledgment of guilt, but is simply a statement of independent facts from which guilt may or may not be inferred." (Emphasis added.)

The question in the instant case is whether Dennis Ellis' statement, as set out in the majority opinion, "is comprehensive in scope and includes all the elements of a crime." If not, the giving of a confession instruction on the basis of this statement was error. It is obvious on its face that the statement does not include the elements necessary to establish that the defendant was a principal to this burglary. There is no indication whatsoever of entering any building or other structure with intent to commit a felony or theft. Defendant, however, was being tried under the principles of accountability set out in section 5—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 5—2), so that the question becomes whether his statement contains all the elements necessary to show that the burglary was committed in such a fashion as to make Ellis legally accountable for the conduct of the one committing the burglary. As this court said in *Rollins*, a confession need not be couched in the terms of the statutes on accountability or burglary. (119 Ill.App.2d 131, 132.) Thus, it is not significant that Ellis did not say his friend entered the building "without authority" and "with intent to commit therein a felony or theft." On the other hand, it is significant that defendant's statement contains nothing to indicate that defendant had "the intent to promote or facilitate" the commission of the burglary, because that mental state is specifically required by the statute governing accountability. Defendant admitted telling his friend, Gary Clay, that the office building burglarized in this case was "an easy hit." That alone cannot be said to reveal "intent to promote or facilitate" a burglary of the named address. According to the statement, when defendant was specifically asked to assist with the burglary of that building, he declined. Obviously, that portion of his statement cannot constitute a confession—rather, it is exculpatory. The only other indication of involvement contained in his statement is an admission that he walked over to the building where the burglary was

going on and stood outside. There was no indication that he signaled to the man inside, or that he served as an assistant to the man inside in any way. He stated that *"[i]f standing by the back door while Clay was inside was considered a look-out, then this is what he was"* (emphasis added), but since merely standing outside a building while someone is inside committing a burglary is not the same as serving as a lookout, that portion of his statement cannot constitute a confession. Whether taken sentence by sentence or viewed as a whole, defendant's statement is exculpatory, not an acknowledgment of guilt. It is incriminating in the sense that it admits conversations with Gary Clay, proximity to the events, and facts which might lead a jury to believe that defendant was in fact serving as a lookout, even though he denied any cooperation with Gary Clay. That is, the statement was properly in evidence as an admission against interest because it conceded many incriminating facts which might logically lead to a finding of guilt despite defendant's protestations to the contrary. It was not, however, a confession under the standards set up by the Illinois Supreme Court and followed by this court, because it did not contain an admission of the mental state required before a party can be held accountable for the criminal conduct of another, nor did it admit actions which necessarily implied that mental state.

To instruct the jury on confessions where the only statements to which that instruction could possibly refer were but admissions is serious and prejudicial error. (*People v. Sovetsky,* 323 Ill. 133, 153 N.E. 615; *Stapleton.*) The case against defendant herein was dependent in large part on the jury's interpretation of his own statement about the events of July 1, 1973, and the instruction characterizing that statement as a confession could not help but prejudice his defense. (*People v. Sowell,* 56 Ill.App.2d 110, 205 N.E.2d 487.) I would reverse and remand on grounds of the erroneous and prejudicial instruction on confessions.