RICHARD HARRIS, Plaintiff-Appellee, *v.* ALGONQUIN READY MIX, INC. *et al.*, Defendants-Appellants—COMMONWEALTH EDISON COMPANY, Counterplaintiff-Appellant and Thirty-Party Plaintiff-Appellant, *v.* ALGONQUIN READY MIX, INC., Counterdefendant-Appellee and Third-Party Plaintiff-Appellee—(PRE-CAST BUILDING SECTIONS, INC., Third-Party Defendant-Appellee and Third-Party Defendant.)

(No. 55659;

First District (4th Division)—July 11, 1973.

Cornelius J. Harrington, Jr., Leo K. Wykell, and Raymond R. Cusack, of Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, for appellant Commonwealth Edison Company.

Francis D. Morrissey and Thomas F. Bridgman, of Baker & McKenzie, of Chicago, for appellant Algonquin Ready Mix, Inc.

Philip H. Corboy and James P. Chapman, of Chicago, for appellee Richard Harris.

Schaffenegger & Watson, of Chicago, (Jack L. Watson, of counsel,) for appellee Pre-Cast Building Sections, Inc.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The plaintiff, Richard Harris, was injured when a crane came in contact with overhead high tension wires. He brought this action against Commonwealth Edison Company because of its alleged negligent maintenance of its transmission lines and against Algonquin Ready Mix, Inc.,

because of its alleged negligent failure to warn of the danger presented by the lines.

Commonwealth filed a counterclaim against Algonquin alleging active-passive negligence. Both Commonwealth and Algonquin brought third-party actions against Pre-Cast Building Sections, Inc., the plaintiff's employer, alleging active-passive negligence.

The jury returned a verdict in favor of the plaintiff against Commonwealth and Algonquin in the sum of $300,000. The plaintiff suffered severe electrical burns over 30% to 40% of his body, and as a result, his right arm was amputated at the shoulder, and also suffered a drop foot condition with a residual impairment. The jury also returned a verdict in favor of Algonquin on Commonwealth's counterclaim and a verdict in favor of Pre-Cast on Commonwealth's third-party complaint. The jury returned a separate verdict in favor of Algonquin on its third-party complaint against Pre-Cast in the sum of $40,000. Algonquin filed a motion to increase the amount of this verdict to $300,000, and the court granted the motion. Commonwealth, Algonquin and Pre-Cast have each appealed.

The issues for review presented by Commonwealth are (1) whether the court erred in denying Commonwealth leave to file an amended counterclaim and third-party complaint; (2) whether the court erred in failing to strike irrelevant and prejudicial testimony; (3) whether the court erred in striking exhibits properly admitted into evidence; (4) whether the court should have declared a mistrial after it made a prejudicial remark; (5) whether the court erred in denying examination on a relevant and material point; and (6) whether the court erred in preventing an adverse and hostile witness from being cross-examined.

The issues presented by Algonquin are (1) whether the court erred in denying its motion for judgment notwithstanding the verdict; and (2) whether the court erred in failing to sustain its objections to evidence of warning signs posted after the injury.

The issue presented by Pre-Cast is whether the court erred in allowing Algonquin's motion to increase the amount of Algonquin's verdict against Pre-Cast from $40,000 to $300,000.

At the time of the accident Pre-Cast was engaged in dumping defective concrete slabs on property belonging to Algonquin, pursuant to an agreement whereby Pre-Cast had some place to dump its slabs. Algonquin thereby obtained fill to make the property more suitable for future industrial development.

Harold Anson, who was both the executive vice-president of Algonquin and the president of Pre-Cast, personally went out on the property and selected the low spots in the southwest portion of the property to be so filled.

On the morning of August 14, 1964, the plaintiff, an eighteen-year-old employee of Pre-Cast, was on the ground next to the crane which was being used to dump the slabs. As the boom swung around, Harris grabbed the slab to guide the drop. A witness testified he saw sparks flying and then saw Harris stiffen up and fall backwards. He did not know whether the boom actually touched the wires when the sparks appeared, but afterwards the boom was resting on the lines.

Anson testified he knew there were wires on poles at the south end of the property but was never informed they were high tension wires carrying 34,500 volts of electricity. There had been no warning signs of any kind posted in the area prior to the accident. Two Commonwealth line patrolmen testified they did not warn of the dangers even though they knew Pre-Cast had a crane in the area and it was part of their responsibilities to do so.

Commonwealth first contends the court erred in denying leave to file an amended counterclaim against Algonquin and an amended third-party complaint against Pre-Cast Building Sections, Inc., at the close of the plaintiff's case. Commonwealth states it sought to delineate "the nature of the relationship that existed between Algonquin and Pre-Cast and to conform the pleadings to the proof," and alleged that either Pre-Cast was operating as the agent of Algonquin or, in the alternative, that both companies were parties to the joint venture of excavating and filling the area near the lines at the time of the accident.

Commonwealth argues the mere fact the jury found against it on each of the charges against Pre-Cast and Algonquin is not dispositive of the question of liability because the unique negligence of each when demonstrated to be joint would have been considered differently by the jury with regard to liability.

■■ Section 46 of the Civil Practice Act (Ill. Rev. Stat., ch. 110, § 46) provides that amendments may be allowed prior to final judgment "on just and reasonable terms." The case law is well settled that whether or not a party may be allowed to file an amended pleading pursuant to Section 46 is within the discretion of the trial judge. In *Ennis v. Illinois State Bank of Quincy* (1969), 111 Ill.App.2d 71, the court stated:

> "Despite this liberal policy, parties do not have an absolute right to amend their pleadings. Amendments are only permitted at the trial court's discretion. * * * The determining factor for overruling a judge's disallowance of a motion to amend must be found in a 'clear abuse of his discretion,' considering the peculiar facts and circumstances of the case and the impact upon all the parties in permitting or not permitting the motion."

■■ In the present case Commonwealth knew prior to trial that Harold

Anson occupied positions with both Algonquin and Pre-Cast, and there was no reason to wait until after the plaintiff had rested his case to amend its pleadings. The court's ruling did not change the evidence, did not bear upon the question of proximate cause, and was clearly not an abuse of discretion.

Secondly, Commonwealth contends the court erred in failing to strike the testimony of an expert witness, George Peirce, who testified with regard to possible safety measures which could have been taken to prevent an accident resulting from a crane coming in contact with high tension wires. The basis of the argument is he was allowed to testify with respect to a model which demonstrated a theory not devised or in effect at the time of the accident.

The record shows the model was admitted into evidence without objection and was used to demonstrate what would happen when a boom of a crane came into contact with electrical wires and to show a practical method to prevent the conduction of electrical current down a crane boom by using a ground wire.

Peirce testified his proposal would have been practical long before 1964, when the accident occurred. The principle involves the use of a ground wire and is well established.

■■ Commonwealth did not object that the model upon which Peirce based his answer was inaccurate or that Peirce had considered matters not in evidence in proposing his system, but it did put on its own expert witness who testified the proposed system was not a good one. He testified he was unaware of any functional or operational use of the proposed system. Through both witnesses the jury was fully informed on the relative feasibility of such a protective system at the time of the accident. In *Moren v. Samuel M. Langston Co.* (1968), 96 Ill.App.2d 133, the court stated:

> "This evidence aided the jury in deciding what was feasible and what the defendant knew or should have known. It did not conclusively determine the standard of care and the jury was not instructed that it did."

Similarly, in the instant case the jury was free to consider the testimony of both expert witnesses and to draw their own conclusions.

■■ Commonwealth's third argument is the court erred in striking a sample letter Commonwealth customarily sent to contractors warning of the dangers of transmission wires. The sample letters had been admitted into evidence over objections of counsel for both Pre-Cast and Algonquin. Mary Pierce, a secretary for Commonwealth, had testified on direct examination she was responsible for typing out warning letters with respect to overhead wires and she could determine from lists she had

sent letters to Pre-Cast and Algonquin, even though she had no personal recollection of the specific letters. However, on cross-examination she stated she could have been mistaken and a different division of Commonwealth might have been responsible for sending the letters. Both Algonquin and Pre-Cast denied receiving any such letters and there were no copies. As a result the court acted properly in striking the sample warning letter because there was no longer any proper foundation for the admission of the exhibits into evidence, since there was no longer any evidence that either party had received any such letter. Furthermore, the jury heard Mary Pierce's testimony as to the contents of the alleged warning letters, and we think Commonwealth was not prejudiced by striking the letter.

Fourth, Commonwealth contends the court should have declared a mistrial after making a remark which was prejudicial. Trial counsel for Commonwealth had returned to the counsel table and was awaiting the return of the judge and other trial counsel after a conference in chambers. As the jury was filing into the box he says he heard the trial judge state to other trial counsel as they approached the courtroom, "Let's settle this case." When counsel informed the court the judge stated, "In all fairness, I'll ask the jury right on the record if they heard any conversation by me or anybody." He then addressed the jury on the issue:

"THE COURT: If your answer is 'Yes' will you please raise your hand? As the jury was coming into the jury box just now, did any of the jurors hear any conversation that I had back there?

(THE JURY): No.

THE COURT: The answer is "No." Right?

(THE JURY): No.

THE COURT: Let the record so show."

■■ Counsel for Commonwealth did not object to the form of the question, therefore the negative answer by the jury must be deemed to be conclusive.

■■ Fifth, Commonwealth contends the court erred in preventing it from asking a witness about a previous accident involving Pre-Cast where a crane came in contact with wires. When the witness was asked about the prior crane contact, objections were made and sustained. A discussion which followed in chambers failed to resolve whether the prior contact had involved substantially the same location, whether the contact was made with power lines or telephone lines, or whether there had been any other similarity which would justify the admission of the testimony into evidence. When court was resumed the line of questioning was dropped and no offer of proof was made. On these facts no appealable issue remains.

■■ Lastly, Commonwealth contends the court erred when it was prevented from calling Gordon Smith, an employee of Pre-Cast, as an adverse witness. Commonwealth wanted to call him under Supreme Court Rule 238, which provides:

"If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination. The party calling an occurrence witness, upon the showing that he called the witness in good faith and is surprised by his testimony, may impeach the witness by proof of prior inconsistent statements."

Commonwealth argues the interest of Pre-Cast, Smith's employer, was adverse and hostile to Commonwealth, and the court did not take into careful consideration the amount of control and influence Pre-Cast exercised over Smith. However, the record shows Commonwealth made no attempt to show that Smith was hostile. The Committee Comments on Rule 238 state the Rule authorizes cross-examination of any witness who "proves" hostile and unwilling. Commonwealth neither proved the hostility of the witness in questioning before the jury nor did he suggest the witness be questioned outside the presence of the jury to show his hostility. In the absence of such proof the ruling of the trial court was correct.

The primary contention of Algonquin Ready Mix, Inc., on appeal is the trial court erred in denying its motion for judgment notwithstanding the verdict. Algonquin maintains by owning the land it did nothing more than furnish a condition and the collision of the boom of the crane into the transmission lines was a new and independent force which was the proximate cause of the plaintiff's injuries. (*Briske v. Village of Burnham* (1942), 379 Ill. 193; *Merlo v. Public Service Co.* (1942), 381 Ill. 300.) In *Merlo*, the court stated:

"Manifestly and undoubtedly, neither the lack of insulation nor the sagging wires did anything more than furnish a condition, and the intervening, independent act of the crane operator was the efficient and proximate cause of the fatal injuries to decedents. There is no evidence in the record tending to show otherwise."

Similarly, in the instant case the overhead wires furnished a condition for the intervening act of the Pre-Cast crane operator who furnished the efficient proximate cause of the plaintiff's injuries.

The plaintiff cites the cases of *Bosjnak v. Superior Sheet Steel Co.*, (1945), 145 Ohio St. 538, 62 N.E.2d 305, and *La Salle National Bank v. Wieboldt Stores Inc.* (1965), 60 Ill.App.2d 188, for the proposition that Algonquin, as the owner of the land, had a duty to make the premises safe for a business invitee. He also cites the case of *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, for the proposition that there can

be no intervening efficient force if the party should have foreseen the accident. However, in those cases the party knew of the dangerous condition or was responsible for its control. In the instant case Commonwealth was in control of the lines and had a duty to warn of potential danger. A layman could not discover the dangerous nature of the wires just by looking at them.

The testimony discloses that Algonquin did not know the lines carried 34,500 volts and Commonwealth neither warned Algonquin by letter nor did its line patrolmen attempt to give warning even though it was part of their job to do so and they knew Pre-Cast had a crane in the area.

■■ We hold Algonquin's motion for a judgment notwithstanding the verdict should have been granted; therefore, we need not consider whether the court erred in admitting evidence of warning signs posted after the injury or whether the court erred in allowing the motion to increase the amount of Algonquin's verdict against Pre-Cast from $40,000 to $300,000.

For these reasons the judgment of the Circuit Court of Cook County for plaintiff against Commonwealth Edison is affirmed, and the judgment for plaintiff against Algonquin Ready Mix is reversed; the judgments in favor of Algonquin Ready Mix and Pre-Cast Building Sections against Commonwealth Edison are affirmed; and the judgment in favor of Algonquin Ready Mix against Pre-Cast Building Sections is reversed.

Affirmed in part and reversed in part.

BURMAN, P. J., and ADESKO, J., concur.