THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICARDO MUNOZ, Defendant-Appellant.

(No. 73-239;

Second District (2nd Division)—September 4, 1975.

Michael P. Toomin, of Chicago, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Clarence Wittenstrom, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Defendant was convicted in June, 1973, of involuntary manslaughter (a Class 3 felony) and reckless conduct (a misdemeanor), after a jury trial in the circuit court of Kane County. He was sentenced to a term of from 1 to 3 years on the manslaughter conviction only.

The victim of both offenses was Helen Bowman, a 77-year-old patient who had been confined at Elgin State Hospital for 11 years where she died on August 25, 1971, at 11:45 p.m. The indictment, returned on January 2, 1973, charged that defendant committed the offense of involuntary manslaughter by prescribing and causing to be administered to her a drug known as Inderal, "an act likely to cause death or great bodily harm" to her, and "thereby causing her death." Count II of the indictment charged that defendant committed the offense of reckless conduct by recklessly prescribing and causing to be administered to her a drug known as Inderal, "thereby endangering the bodily safety of Helen Bowman." Defendant was the physician assigned to the geriatric ward ("Pershing Two") where Helen Bowman was housed.

On appeal defendant presents these issues: (1) whether the trial court erred in admitting in evidence, as past recollection recorded, the entry by a nurses' aide in a so-called "incident book" that "medication given and charted as prescribed by physician"; (2) whether the trial court erred in overruling defendant's objections to the hypothetical question posed by the State to one Dr. Glick, an expert cardiologist, on the question of causation; (3) whether the trial court abused its discretion in restricting defendant's cross-examination of Miss Kindle and of Dr. Glick; and (4) whether the evidence established the defendant's guilt beyond a reasonable doubt.

We consider first the propriety of the trial court's ruling which admitted in evidence the entry by Miss Kindle in the incident book. This was obviously crucial to the State's case in view of the fact that defendant having been charged with ordering the drug Inderal to be adminis-

tered to Mrs. Bowman, thus "causing her death" and "endangering [her] bodily safety," the State was required to prove that the medication had in fact been given. The medication administration record for the month of August, 1971, was unavailable. Therefore, the State sought to prove by circumstantial evidence that it had in fact been given.

Insofar as relevant to this issue Mrs. Stepson testified that she was the "charge aide" at Pershing Two, meaning that she was the non-medical person in charge on the day shift (from 8 a.m. to 4 p.m.) during the time in question when Dr. Munoz was the ward physician. She stated that she was familiar with the standard operating procedure for the administration of drugs. She would enter the drug on medication cards of different colors depending on the time it was to be given. There were four medication periods: 8 a.m., 12 noon, 4 p.m. and 8 p.m. It was her responsibility to tell the ward physician which patients needed to be seen and she would accompany him through the ward. She was with Dr. Munoz when he wrote the physician's order for drugs for Mrs. Bowman on August 25, 1971, and identified his signature on the order. His order included "10 mg. of Inderal b.i.d. for five days" (in addition to one tablet a day of another drug). The letters "mg." refer to milligrams; the letters "b.i.d." meant that it was to be given twice a day at 8 a.m. and 8 p.m. She testified that the night shift would give the 8 a.m. medication and the evening shift, working from 4 p.m. to midnight, the 8 p.m. medication. Her initials appeared on Dr. Munoz's physician's order sheet and her testimony as to the events of August 25, 1971, was based on "my initials"; she had no independent recollection.

She further testified that she left work at about 4 p.m. when Miss Kindle and Miss JoAnn Davis came on duty for the evening shift. She described Mrs. Bowman as "kind of asthmatic," with difficulty in breathing, "a small lady," "very thin," and "could have weighed" 97 or 98 pounds.

Norma Fidler testified that she was a registered nurse with the title of Pavilion Director; this title meant that she was in charge of administering several wards, including Pershing Two. She described the hospital procedure which requires ward personnel to record in the incident book what happened on each of the three shifts. She identified State's Exhibit 3 as being the incident book used in Pershing Two. On cross-examination she stated that Mrs. Bowman had difficulty walking and during the spring and summer of 1971 was brought into the infirmary for treatment of lacerations resulting from falls; that there were occasions when she was pushed to the floor by other patients.

Miss Kindle testified in substance that she and JoAnn Davis were charge-aides assigned to the Pershing Two ward. They worked the 4

p.m. to midnight shift and it was their responsibility to give the patients the 4 p.m. and 8 p.m. medications and they would record when they did so in the incident book. Dr. Munoz's medication order was in effect when she came to work on August 25, 1971. She stated that she had no independent recollection of administering Inderal to Mrs. Bowman. When she was shown the entry of August 25, 1971, in the incident book ("medication given and charted as prescribed by physician") she recognized it as being in her handwriting, but stated that it did not refresh her recollection of the event or as to whether she had given the medication ordered by the defendant. She could not recall any events that occurred on August 25, 1971, nor any circumstances under which she made that entry. Although drugs were given at 4 p.m. and 8 p.m. on her shift, the book entry as to the giving of medication did not reflect or indicate whether it was done at 4 p.m. or 8 p.m., and she had no independent recollection when the entry had been made on that date. When defendant's counsel on cross-examination asked, "What steps did you take to make sure that what you put in the book was true," she answered, "I really don't remember." The following additional excerpt of defense counsel's cross-examination of Miss Kindle is relevant:

"Q. [Defense Counsel] What I am asking you, how were you able to say that that entry is true if you don't recall anything that happened of your own personal recollection?

A. [Miss Kindle] Well, I can't say it.

Q. You can't say what?

A. That it has to be true.

Q. You can't say that; can you?

A. No, because I can't remember.

Q. Now, let me ask you this, Miss Kindle, can you tell from that entry that we are referring to what time of the shift it was given or what time of the shift it was administered?

A. No, the time isn't written in there.

Q. There were two times when drugs would be given according to physician's orders on the ward in question; is that right?

A. Yes.

Q. Four p.m.; is that correct? Four o'clock when you came on?

A. If there was an order for four o'clock medicine, yes.

Q. And eight o'clock?

A. Eight o'clock at night.

Q. Those would be the two times that drugs and medications would be given; right?

A. Yes.

Q. * * * That entry that you have been looking at does not indi-

cate whether it was a four o'clock or eight o'clock order; does it?
A. No.
Q. Can you recall of your own recollection whether it was the four o'clock or eight o'clock?
A. No, I can't."

Miss Kindle could not say whether her entry on August 25, 1971, in the incident book[1] was in the same condition as it was on August 25, 1971.[1]

Over the defendant's objection the court ruled that Miss Kindle's incident book entry satisfied the test of past recollection recorded and was admissible because it was "reasonably contemporaneous" with the facts it recorded, and because the witness has testified that "it correctly reflected what she did."

Defendant argues that the entry was not admissible under the past recollection recorded exception to the hearsay rule because of the absence of these four essential elements:

"(1) the witness must have had firsthand knowledge of the event,

(2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it,

(3) the witness must lack a present recollection of the event, and

(4) the witness must vouch for the accuracy of the written memorandum." McCormick on Evidence § 299 at 712 (Cleary ed. 1972).

It is clear from Miss Kindle's testimony and from the record that there was a failure to establish her firsthand knowledge of the event. While it is true that she testified that the entry correctly reflected what she had done, she was unable to state, at any time that she had firsthand knowledge. JoAnn Davis, the other charge aide on duty at that time was equally responsible with Miss Kindle for giving the ordered medications at 4 p.m. and 8 p.m. Since Miss Kindle had no recollection whatever of the event the entry in the incident book that the medication was given could be intended to record such dispensation by Miss Davis and could have been predicated upon her statement to Miss Kindle to that effect. ■■ While the element of contemporaneousness is not capable of precise definition in determining whether a past recollection recorded is admissible, its limits must depend on the circumstances of each case. (Koch v. Pearson, 219 Ill. App. 468). It should be noted that in that portion of Miss Kindle's testimony which is set forth above she was unable to say "that it [the entry in the incident book] has to be true", and that she could not tell what time of the shift it was given, whether

it was at 4 p.m. or at 8 p.m. It is therefore impossible to determine from her testimony when the medication was given, whether at 4 p.m. or 8 p.m. If the entry referred to the 4 p.m. medications in the ward, the entry certainly would not be contemporaneous with the administration of Inderal to Mrs. Bowman, since that drug was ordered as twice-a-day medication, which was to be given at 8 p.m. on August 25, 1971.[1]

■■ Moreover, it is obvious from this record that Miss Kindle was unable to vouch for the accuracy of the entry. In *People v. Jenkins*, 10 Ill.App.3d 166, 172, the court said:

> "The witness must authenticate the writing by stating that he recorded the facts at the time of the occurrence, and that the record is truthfully and accurately a record of the facts as he observed them at the time."

In the case at bar the witness had no independent recollection of the entry except for recognizing her handwriting. Her statement that the statement is true because it is reported in the entry is insufficient. (*Kolber v. Frankenthal*, 159 Ill.App.382.) Miss Kindle had no recollection of either making the entry or the surrounding circumstances and was unable to vouch for its accuracy.

The State relies on *Stanton v. Pennsylvania R.R. Co.*, 32 Ill.App.2d 406. In *Stanton* a registered nurse testified that there were no changes in the entries since she had made them. In the case at bar Miss Kindle was unable to say whether the entry was in the same condition.

We therefore hold that the trial court erred in admitting the entry into evidence as past recollection recorded. Had the trial court sustained defendant's objection there would have been no proof in the case at bar that the medication Inderal had been administered to Mrs. Bowman and defendant would have been entitled to a directed verdict as to both counts of the indictment.

Our ruling on that issue makes it unnecessary to consider other issues raised in this case.

For the reasons stated in this opinion the judgment of the circuit Court of Kane County is reversed.

Judgment reversed.

T. MORAN and DIXON, JJ., concur.

---

[1] There was also testimony at trial by Miss Kindle and other witnesses that after Mrs. Bowman and others had been put to bed in Pershing Two, Mrs. Bowman had difficulty breathing. The Fire Department was called; they administered oxygen until Dr. Raud (the physician on duty) arrived. Dr. Raud had prescribed Aminophyllin when he received the call. Dr. Raud testified that Mrs. Bowman had difficulty breathing and he had her transferred to the Medical-Surgical Building where she died at 11:45 p.m. on August 25, 1971. His final diagnosis as to the cause of death was "arteriosclerotic heart disease" and he so stated on the death certificate.