THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DONALD GENE GISCHER, Defendant-Appellant.

Fifth District   No. 75-410

Opinion filed July 25, 1977.

848

G. J. MORAN, J., dissenting.

Michael J. Rosborough and Phillip A. Kramer, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a conviction and sentence imposed in the Circuit Court of St. Clair County upon a jury verdict finding defendant guilty of burglary. On appeal it is urged that the trial court erred in four respects: in limiting the cross-examination of two State's witnesses and refusing to allow defendant to call two witnesses with regard to defendant's intent; in admitting into evidence an inculpatory statement read from a police report; in giving both an admission and a confession instruction; and, in ordering the sentence of probation to run consecutively to a sentence of probation for an earlier offense.

On May 17, 1974, defendant, Donald Gischer, was observed by neighbors as he arrived at his brother-in-law's home. He tried the front and then the back doors, and then returned to the front of the house. One neighbor took the license plate number of the defendant's car, while another called the police to inform them of a suspected burglary. The defendant was then observed leaving the house with several guns wrapped in a quilt. Seeing the neighbor, the defendant identified himself as the victim's brother-in-law and stated that he was picking up some guns. The defendant then put the guns into the back seat of his car and drove off.

Upon arriving at the house, the police officer noted that a front window of Richard Raby's home had been pried open. A description of the defendant and his car was transmitted to Officer Benne, who stopped the defendant about 15 minutes later. Observing a number of gun stocks in the quilt lying in the back seat, Officer Benne arrested the defendant and took him to the Cahokia Police Station. Upon his arrival defendant was advised of his *Miranda* rights and asked if he wished to speak to Sergeant Sanderson, also on the Cahokia Police Department, without an attorney present. He agreed to do so and subsequently wrote and signed an inculpatory statement.

After a jury verdict finding defendant guilty of burglary, he was sentenced to a four-year term of probation to run consecutively with a term he had received for an earlier offense, a fine of $400, with six months imprisonment in the county jail to be included as part of the probationary period.

As his first issue on appeal defendant alleges that the trial court's refusal to allow defense counsel to examine two witnesses and to pursue a line of questioning on the cross-examination of Sergeant Sanderson and Richard Raby as to why defendant had taken the guns denied him the opportunity to establish that he did not have the requisite intent to deprive Raby of the guns permanently. Defendant maintains that the cumulative effect of these rulings denied him his constitutional right to present a defense. In so

arguing defendant relies upon the decisions in *Washington v. Texas*, 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967), and *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973) which held, respectively, that an accused may not, consistent with the Sixth and Fourteenth Amendments, be arbitrarily deprived of the right to present witnesses to establish a defense nor the right to confront and cross-examine witnesses against him.

At trial defendant by an offer of proof sought to introduce the testimony of his sisters Bernice Raby and Linda Weigand. The testimony adduced in these offers of proof showed that on the evening prior to the burglary, Mr. Raby had been discovered in a car with an unknown woman by the defendant and Ms. Weigand who informed Mrs. Raby of this. Upon his arrival home, Mr. Raby was met at the door of his home by his wife who confronted him with this story of his alleged whereabouts, and an argument ensued. Mrs. Raby testified that the defendant was not present during the altercation with her husband but that Linda Weigand was in a car parked in the driveway. Mrs. Raby did not think Ms. Weigand could hear the argument because it "wasn't that loud." Mrs. Raby further testified that she could not recall any threats made to her by her husband. Ms. Weigand in the offer of proof stated that the defendant was down the street but could have heard the argument because it was loud. No testimony in either of the offers of proof was adduced which indicated that Mr. Raby had threatened to shoot anyone. Nor was there any indication that the defendant himself ever considered anyone to be in danger. The trial court sustained the State's objection to the offer of proof on the ground of relevance. We find no error in the court's ruling and further find that the refusal of this testimony did not deprive defendant of his constitutional right to present a defense.

■ ■ The defendant argues that the intent to permanently deprive is one of the material elements of the instant charge of burglary (Ill. Rev. Stat. 1975, ch. 38, par. 16—1).

> "A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct." (Ill. Rev. Stat. 1973, ch. 38, par. 4—4.)

An inference of intent may be made by the act of taking another's property. (*People v. Baddeley*, 106 Ill. App. 2d 154, 245 N.E.2d 593.) However, any evidence offered to rebut such an inference must be relevant and material to the issue of intent. There was nothing in the offers of proof to indicate that defendant did not intend to act as he did, that he had permission to take the guns, or that he intended to take them only temporarily. The defense theorized that the defendant may have

taken the firearms in order to protect Mrs. Raby from harm by her husband. Even on the questionable assumption that the testimony offered would tend to support this theory, this evidence would not have established whether defendant *intended* to act as he did in removing the guns, but rather it would have established a possible *motive* explaining why defendant acted in this manner. Motive is not an element that the State must prove to establish its case. An accused's motive is not a defense to the criminal charge of burglary, and it has no bearing on guilt or innocence. Thus, the testimony which the defense offered was simply not relevant or material to any issue of the case. "In all criminal cases it is important that the evidence be fairly limited to the issue on trial, as collateral or extraneous matters can only mislead or prejudice a jury." *People v. Pickett*, 34 Ill. App. 3d 590, 598-99, 340 N.E.2d 259, 266.

■■ Finally, it is clear that the exclusion of this testimony did not infringe upon defendant's constitutional rights. The right to present and examine witnesses is not violated where the testimony sought to be produced is not relevant and material to a valid defense to the crime charged. An examination of both the *Washington v. Texas* and *Chambers v. Mississippi* decisions clearly demonstrates that the Supreme Court had no intention of abrogating established evidentiary rules requiring testimony to be relevant and material before it can be admitted into evidence.

■■ We now consider the limitation of the cross-examination of two State's witnesses which defendant claims was error. During the cross-examination of Sergeant Sanderson defense counsel asked him if during his investigation he attempted to learn the defendant's intent in going into the Raby home. After the trial court sustained the State's objection to the question, defense counsel asked no further questions of the witness, did not take exception to the court's ruling, did not tender an offer of proof, and did not attempt to recall the witness during the presentation of the defense. During the cross-examination of Raby, the burglary victim, defense counsel attempted to elicit from the witness whether an incident had occurred the day before the burglary which created hostility between him and the defendant. The State objected, and the court stated that the objection would be sustained unless the defense could show relevance. A discussion at the bench off the record was had after which the court sustained the objection. Again, no exception to the ruling was taken, no offer of proof tendered, and no later attempt to recall the witness was made. The State urges that defendant failed to preserve the issue of the restriction of the cross-examination of these witnesses by failing to make an offer of proof. We agree. In its present posture there is nothing in the record to contradict the trial court's finding of irrelevance. "The purpose of an offer of proof is merely to preserve on the record the nature of the

offered evidence, to which an objection has been sustained so as to enable a court of review to determine if the ruling was correct." *(People v. Persinger* 49 Ill. App. 3d 116, 363 N.E.2d 897.) In the absence of an offer of proof or other demonstration of relevance, no appealable issue remains. *Harris v. Algonquin Ready Mix, Inc.,* 13 Ill. App. 3d 559, 300 N.E.2d 824.

■■ Even so, if we were to consider these rulings under the plain error doctrine, Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)), we find no prejudicial error to the defendant. Presumably, defense counsel sought to elicit testimony as to why the defendant took the guns just as was attempted in the offers of proof of Ms. Weigand and Mrs. Raby. As discussed, we find that this line of questioning went to defendant's motive not his intent and that the matter bore no relevance to the issue of guilt or innocence.

The defendant claims that the reading into evidence from a police report of an oral inculpatory statement made by the defendant was reversible error. The statement referred to was as follows:

"According to the report, it says here Donald stated that he ripped off his brother-in-law's house on St. Paul Drive and took all the guns that are in the car from his house."

■■ While it appears that a proper foundation for the officer's reading from the report was not made because there were no questions and answers to the effect that the statement was an original memorandum made at or near the time of the event and that the witness vouched for its accuracy *(People v. Munoz,* 31 Ill. App. 3d 689, 335 N.E.2d 35), the defendant waived his right to appeal on this issue by failing to raise the point in his motion for new trial. " 'Where the grounds for a new trial are stated in writing, the accused is limited on review to the errors alleged therein and all other errors are deemed to have been waived.' " *People v. Price,* 32 Ill. App. 3d 610, 612, 336 N.E.2d 56, citing *People v. Hairston,* 46 Ill. 2d 348, 367, 263 N.E.2d 840, 851.

■■ Even if the court were to recognize the admission of the statement from the police report as plain error under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)), it cannot be said that the reading of the defendant's statement that he "ripped off" his brother-in-law's house constitutes reversible error. Where erroneously admitted evidence reveals only that which is established by other competent evidence, its admission is not prejudicial. *(People v. Laurry,* 5 Ill. App. 3d 713, 283 N.E.2d 895.) There was ample evidence introduced that established that the defendant had stolen his brother-in-law's guns: a signed written statement to that effect, the neighbor's observations of the defendant leaving the Raby home with the guns, and Officer Benne's discovery of the guns in the back seat of the defendant's car. There was

also other competent testimony establishing the defendant's guilt, including Gischer's statement to Officers Benne and Sanderson that he was solely responsible for the burglary.

Because of the overwhelming evidence against the defendant, then, the admission of the hearsay remark, if recognized as plain error, was not unduly prejudicial and cannot support a reversal.

Defendant's contention that a confession instruction was improperly given is also without merit. Gischer's signed, handwritten statement was that he:

> "Came down from Freeburg, Ill. on the date of Friday 17, and dropped by brother Richard and wife Treasa off and went to my brother in laws house. I knocked and no one was home and then I don't know exactly why but I went in the window next to the door and I took some shotguns then I put them in the car and picked my brother and them up and a couple of minutes later we was pulled over and take to the police station.
>
> /s/ Don Gischer
>
> The approx. time that I burglarized was about 8:00 p.m. my brothern laws address of his home is 725 St. Paul Drive Cahokia."
>
> /s/ Don Gischer"

■■ This statement clearly falls within the definition of a confession as a " 'direct acknowledgement of guilt on the part of the accused, either by a statement of the details of the crime or an admission of the ultimate fact.' " (*People v. Ellis,* 31 Ill. App. 3d 666, 668, 335 N.E.2d 23, 25.) The statement contains all the elements of the crime, *People v. Horton,* 65 Ill. 2d 413, 358 N.E.2d 1121, for it admits breaking and entering and taking the guns from the particular premises. We cannot agree that it did not admit the necessary mental state, *i.e.,* intent to permanently deprive because of the words "* * * I don't know why exactly * * *." The inclusion of these words might have been relevant to the defendant's motive in taking the guns, but they did not "tend to indicate the existence of a defense" that would require the giving of an admission rather than a confession instruction. (*People v. Sowell,* 56 Ill. App. 2d 110, 205 N.E.2d 487.) The defendant did not need to have specifically stated his intent to keep the guns from Raby permanently, for, as the court said in *People v. Rollins,* 119 Ill. App. 2d 116, 132:

> "There is a reasonable inference from what he told the police officer that he committed the crime with which he was charged. That his answers were not couched in the terms of the statutes on accountability or burglary is hardly remarkable—it would have been remarkable if they had been. The facts he recounted to the police reasonably and directly implied guilt * * * ."

■■ The defendant also urges us to rule as error the giving of both a

confession and an admission instruction, on the premise that by doing so the trial judge allowed the jury to decide the legal question of which instruction to apply. This contention is without merit. The jury was not presented with the legal question of whether to apply either the confession instruction or the admission instruction. In fact the jury was specifically instructed in People's Instruction I which conformed to IPI— Criminal No. 1.01 and which was given without objection as follows:

> "The law applicable to this case is stated in these instructions and it is your duty to follow all of them. You must not single out certain instructions and disregard others."

As discussed, the written statement of the defendant justified the giving of the confession instruction. The admission instruction, which was given at the request of the defense, was also justified by the evidence in that the testimony of Sergeant Sanderson and Patrolman Benne revealed that defendant had made repeated admissions to them of the burglary in addition to those contained in his written confession.

The defendant's final point on appeal is that the court acted without authority in imposing a probation sentence to commence on February 9, 1977, which was the date of the termination of an earlier probation sentence stemming from a separate burglary offense.

While there is no specific provision in the Unified Code of Corrections for imposition of consecutive probation sentences, sections 5—8—4(a) and (b) of the Code (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—8—4(a) and (b)) provide that the court shall not impose consecutive prison sentences for offenses which were committed as part of a single course of conduct, and that consecutive sentences shall not be imposed unless the court is of the opinion that in the light of the nature and circumstances of the offense and the history and character of the defendant, a consecutive sentence is required to protect the public from further criminal conduct by the defendant.

Even though we agree that the criminal sanctions are to be determined by the legislature (*People v. Breen*, 62 Ill. 2d 323, 342 N.E.2d 31), we cannot accept the defendant's position that the legislature's silence on this matter prohibits the imposition of consecutive probation sentences. We see no reason why the general principles underlying the imposition of prison sentences cannot also serve as the foundation for the ordering of probation sentences.

The authority to impose consecutive probation sentences, then, may be implied from sections 5—8—4(a) and (b) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—8—4(a) and (b)), which allow consecutive terms of imprisonment. Also, by negative implication of section 5—6—2(b) of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—2(b)), providing that multiple terms of probation imposed

at the same time shall run concurrently, we may find that terms of probation not imposed at the same time and not for the same offense may run consecutively.

The fact that the trial judge placed the defendant on probation rather than sending him to jail for the entire four year sentence does not mean that the court implicitly determined that he did not pose a substantial threat of further criminal conduct to the police. Rather the court could have found that the consecutive sentence of probation with its concomitant restrictions and responsibilities was necessary to keep the defendant from being such a threat.

Defendant's claim that the delay of the commencement of the probationary period for some 18 months after the date of sentencing resulted in the imposition of a probation sentence of longer than five years, contrary to sections 5—6—2(a) and (b)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—6—2(a) and (b)(1)) limiting such a term to five years for a felony, is clearly without merit. The statute limits the period of five years for each offense; nowhere does it state or imply that the total probationary period for separate offenses is limited to five years.

■■ Therefore, because the offenses were not committed as a part of a single course of conduct (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8(4)(a)); the terms of probation were not imposed at the same time (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—2(b)); and because the aggregate nine year term of the two sentences did not exceed twice the maximum authorized term (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—2(b)(1)), we find that the consecutive sentence of probation was properly imposed.

For the reasons discussed herein the judgment of the Circuit Court of St. Clair County is affirmed.

Judgment affirmed.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting in part:

I concur with the majority opinion except that part which holds that the trial court properly imposed consecutive sentences of probation. I do not agree that this authority may be implied from the sections of the Unified Code of Corrections cited by the majority (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—8—4(a) and (b), 1005—6—2(b)). I would imply just the opposite from those sections.