THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARK RIPA, Defendant-Appellant.

Second District   No. 78-310

Opinion filed January 21, 1980.

Jeffrey B. Steinback and Edward M. Genson, both of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, and Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Following a jury trial the defendant, Mark Ripa, was convicted on four counts of possession of various controlled substances and acquitted of one count of possession with intent to deliver. (Ill. Rev. Stat. 1977, ch. 56½, pars. 704(e), 1204(d), and 705.) Defendant was sentenced to two years' imprisonment on the four counts, the sentences to run concurrently, and was also fined $5,000. He appeals contending that the search warrant was not based on probable cause and that he was deprived of the right to make that showing; that the search was unconstitutional because of the delay in the execution of the warrant; that various trial errors deprived him of a fair trial; and that he was not proved guilty beyond a reasonable doubt. We do not agree.

## The Search Warrant

The search warrant described "Cannabis Sativa plant and production material" located at 440 N. Mill Road, apartment 19, in Addison. It was sworn to on November 8, 1976, by police officers Chester Hall and Daniel McCollum. In his affidavit Hall alleged that on November 8, 1976, he was standing in a common area and from about a distance of 30 feet observed a green leafy plant growing in the upper window of the building which he later found to be apartment 19. He further stated that he had been a police officer for six years and had observed cannabis plants growing on approximately 20 occasions resulting in arrests and had been trained in the police department to recognize the plant. McCollum in his affidavit stated that he was with Hall and had occasion to observe a green leafy plant which resembled a cannabis plant growing in the apartment; that after exiting the vehicle in which they were riding and making a closer observation from a common area approximately 30 feet from the window

he was able to positively identify the plant as cannabis sativa. He also stated that he had been an officer for the village for approximately four months and during that period had observed plants growing on five prior occasions resulting in five prior arrests for unlawful production of cannabis sativa plants; and that he had received training in the University of Illinois in the recognition of such plants. The testimony of both officers at the suppression hearing substantially conformed to the statements in their affidavits. At that hearing the defense counsel sought to test the credibility of the officers, particularly on the question of how they could possibly see that this was a cannabis plant when they were passing in their vehicle and were some distance away. Counsel, however, conceded that he could not go beyond the four corners of the search warrant. Over objection, the court refused to allow this line of inquiry, and at the conclusion of the hearing denied the motion to suppress the search warrant.

At the time of the suppression hearing it is clear that both the court and counsel were proceeding on the basis of *People v. Bak* (1970), 45 Ill. 2d 140, and *People v. Stansberry* (1971), 47 Ill. 2d 541. The trial commenced on June 29, 1977, and defendant was sentenced on June 15, 1978. On June 26, 1978, the United States Supreme Court announced its opinion in *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, which permitted challenges as to the veracity or accuracy of affidavits for search warrants under certain circumstances. Defendant argues that *Franks* should be applied retroactively to permit a challenge for the search warrant based on error which he claims to be of constitutional magnitude. In our view we need not decide whether *Franks* is to be applied retroactively since we conclude that the result would be the same even if it were to be so applied.

*Franks* holds that:

"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. * * * Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side,

there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing." (438 U.S. 154, 171-72, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2685.)

It thus appears that the scope of *Franks* is narrowly limited and that the defendant does not meet the preliminary test required. See *People v. Anderson* (1979), 74 Ill. App. 3d 363, 369-70.

While defendant contends that he was prevented from making the required showing because of the ruling of the court and the then applicability of *Bak* this alone does not mandate an evidentiary hearing, even conceding the applicability of *Franks*. See *People v. Hall* (1979), 66 Ill. App. 3d 891, 894.

■■ Defendant argues that the preliminary foundation under *Franks* was satisfied by the circumstance that Officer Hall in his affidavit for the search warrant alleged that he initially observed the plant in the second story window which would have been some 50 or 75 feet away from the car he and his fellow officer, who were off duty, were driving in along an adjacent thoroughfare. He claims that evidence existed to show the impossibility of the plant being identified as cannabis at that distance but that he was precluded from offering such testimony. However, as the State points out, the affidavits of both Officer Hall and Officer McCollum and their consistent testimony at trial reflect their final conclusions that they identified the plants from a stationary position after exiting their vehicle and that they were then in an area in which they had a right to be at a distance of approximately only 30 feet from the plant. It would therefore appear that the only purpose demonstrated by the attempt to attack the credibility of the officers or which could be pursued at an evidentiary hearing would be the attempt to cross-examine the officers generally to attack their credibility. There is no indication in the record that the officers were deliberately untruthful or that they made statements in reckless disregard for the truth, which would be a foundation for requiring an evidentiary hearing under *Franks*. We therefore conclude that the preliminary foundation which would require an evidentiary hearing under *Franks* even if that decision were to be considered retroactive has not been shown and that there was therefore no error in denying the motion to suppress on this ground.

## EXECUTION OF THE WARRANT

■ Defendant next contends that the delay in the execution of the search warrant amounted to a violation of his rights under the fourth amendment to the Constitution of the United States and its requirement that searches

and seizures must be reasonable and based upon probable cause. We agree with the State's position that the issue has been waived because the timeliness of execution was not raised until trial. While defendant argues that he was not aware of all the facts until trial, it appears that the only fact of which he was unaware prior to trial was that the officers went to the premises on November 8 but decided not to execute the warrant while the apartment was unoccupied. This we fail to perceive as material.

Moreover, the defendant has made no claim of prejudice by the delay nor has he claimed that probable cause was no longer present at the time of the execution of the warrant.

■■ Also, there is no real basis for the argument on the merits. The Federal cases cited by defendant all require some showing of actual prejudice by reason of the delay in execution or that probable cause had evaporated between the time of the issuance and the time of the execution of the warrant. (*House v. United States* (D.C. Cir. 1969), 411 F.2d 725, 728; *United States v. Nepstead* (9th Cir. 1970), 424 F.2d 269, 271; *United States v. Bedford* (3d Cir. 1975), 519 F.2d 650, 657; *Spinelli v. United States* (8th Cir. 1967), 382 F.2d 871, 886, *rev'd on other grounds* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584.) Here the "delay" in the execution of the warrant of approximately two days, with no showing of the interim dissipation of probable cause or any prejudice to the defendant, could comprise no constitutional violation.

Defendant's claims of prejudicial trial error are also not persuasive.

### The Claimed Deprivation of Confrontation of a Witness

Defendant first argues that error occurred when the court admitted a statement of Daniel Papineau, who occupied the apartment with the defendant and who also was arrested. The officers testified that when they entered the apartment they handed the search warrant to Papineau and saw additional cannabis plants below the window. Officer Hall testified that Papineau "indicated" that the plants were not his. Officer McCollum testified more specifically to the statement made, stating that Papineau told them "those plants aren't mine, they're Ripa's." Both statements attributed to Papineau were elicited by defense counsel on cross-examination of the officers, who had not mentioned the statement in response to direct examination. Defense counsel again referred to the statement by Papineau in his closing argument to the jury as indicating an attempt to place the blame on Ripa.

The State has argued that defendant has waived the issue because he initiated the inquiry and exploited it. It appears, however, that the question of the statement was raised *in limine* prior to the commencement of trial. At that time the court stated that from the indications to him at

that time the statement appeared to be spontaneous and an exception to the hearsay rule, but if an objection were made during the trial he would at that time decide depending on whether there was evidence that it was not spontaneous.

As noted, the statements were admitted, not over an objection by the defendant during trial, but in response to his own inquiry on cross-examination. In this posture it is doubtful that defendant's counsel, by initiating the statement first in his cross-examination of Officer Hall, could be said to be waiving his objection. He could have been merely attempting to minimize the effect of the statement if brought up subsequently by Officer McCollum. Compare *People v. Spates* (1979), 77 Ill. 2d 193, 199-200.

In any event, we find no error in the ruling on its merits. Defendant does not question the court's finding that the statement attributed to Papineau was a spontaneous utterance and therefore a traditional exception to the claim of hearsay. Instead he argues that the statement was in violation of sixth amendment rights to confront witnesses as interpreted in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. *Bruton* clearly limited its application to testimony inadmissible under traditional hearsay rules and left open the question with respect to testimony admissible under one of the traditional exceptions to the rule. (391 U.S. 123, 128 n.3, 20 L. Ed. 2d 476, 480-81 n.3, 88 S. Ct. 1620, 1623-24 n.3.) The Illinois Supreme Court has relied on this limitation where testimony has been admitted as a declaration of a co-conspirator. (*People v. Davis* (1970), 46 Ill. 2d 554, 558.) This spontaneous utterance exception is similarly a traditional one; thus, the constitutional right of confrontation as interpreted by *Bruton* was not denied.

THE STRIKING OF THE TESTIMONY OF VARIOUS DEFENSE WITNESSES OSTENSIBLY OFFERED TO IMPEACH THE PROOF BY THE STATE THAT THE SUBSTANCES FOUND WERE CONTRABAND

■ Principally in issue is the striking of the testimony of Dr. Castro, an established expert in the field of organic chemistry. The purport of his testimony was that the various tests administered by the State's witnesses were not conclusive in detecting the presence of the substances in question. He admitted, however, that he had not tested any of the substances offered in evidence and inasmuch as the defendant did not seek to require the production of the substances for inspection no denial of due process rights to rebut State evidence is involved. At best the inquiry is whether Dr. Castro's testimony is relevant as an impeachment of the chemical analysis of the State's witness. A careful reading of the testimony of Dr. Castro and that of Ms. Stevenson, the State's witness, indicates that the testimony of Dr. Castro did not, in fact, controvert Stevenson's and that it was therefore properly stricken as not probative.

Castro testified that a trained botanist with experience in plant identification could positively identify cannabis. Stevenson testified to her expertise in cannabis identification in particular, even though she was not a plant toxicologist. Thus there was not a direct impeachment of her actual identification but only a collateral quarrel over qualifications.

Further, Dr. Castro's testimony with respect to the PCP was not probative. He testified that the gas chromatography mas spectrometry (GCMS) test performed by Stevenson is conclusive if performed properly, by which he meant the standard for comparison had to truly be PCP. That conclusion, however, is readily apparent from the record and Dr. Castro's assertion does not contradict Stevenson's testimony since he knew nothing about the standard she used. (*Cf. People v. Vance* (1979), 74 Ill. App. 3d 446.) And in fact Ms. Stevenson testified that the standard used to compare with the substance was PCP. Therefore the testimony was properly stricken since it would not have an impeaching value but would merely have confused the jury. It is also clear that the court properly excluded the testimony of two witnesses proffered by defendant for the purpose of impeaching the officer's ability to identify cannabis. One witness, Robert Huntley, was a horticulturalist, and the other, George Twardosz, was an evidence technician. Whether Officer Hall could positively identify cannabis from three feet or from a greater distance was not an issue at trial. The right to rebut State's evidence does not extend to the introduction of irrelevant evidence. (*People v. Gischer* (1977), 51 Ill. App. 3d 847, 851.) Nor can the testimony be sustained as going to Officer Hall's credibility. Credibility cannot be attacked by reference to extraneous matters. *People v. Gardner* (1977), 47 Ill. App. 3d 529, 537.

### CLAIMED VIOLATION OF THE BEST EVIDENCE RULE

The defendant contends that Officer Hall's testimony with respect to various items he described as having seen in defendant's bedroom and bedroom closet during the November 10 search, but not seized, and which had defendant's name on them were admitted in violation of the best evidence rule. The items include an army coat, guitar case, legal paper, pill bottle, an address book, and several letters, all with defendant's name on them. On direct examination of Officer Hall, defense counsel's objections to the names on the papers and letters seen in the bedroom were sustained on the stated basis that the papers were the best evidence. On cross-examination Hall was asked, as to several particular items seized from the bedroom, whether Ripa's name was found on those items and received a negative answer. On redirect examination, over defense objection, Hall was allowed to testify as to seeing Ripa's name on various items not seized.

Since the best evidence rule applies to writings, the preliminary

question is whether the descriptions on the items in question are within the rule. Leading authorities have suggested that a judge has discretion to apply the rule to inscriptions contained on objects. (McCormick, Evidence §231, at 561 (2d ed. 1972).) Here, the exactness of the inscription or label on the items is not in issue; rather the sole question is whether the name was, in fact, affixed. Since the exact contents of the writings are not in issue we find no abuse of discretion in the ruling. Moreover, the fact of ownership has an existence apart from the name on the item. "The best evidence rule does not apply where a party seeks to prove a fact which has an existence independent of any writing, even though the fact might have been reduced to, or is evidenced by, a writing." *Continental Illinois National Bank & Trust Co. v. Eastern Illinois Water Co.* (1975), 31 Ill. App. 3d 148, 159.

### INSTRUCTIONS

■■ Defendant has also claimed that the court erred in failing to instruct the jury as to knowledge as an element of the offense. We find no basis in the record for this position since the jury was instructed on the element of knowledge. Defendant apparently argues that a definition of "knowingly" should have been given to the jury. He offered no such instruction and has submitted no authority to support his position that the term must be defined. Moreover, the failure of the defendant to make a specific objection in the trial court constitutes a waiver of the issue on appeal. See *People v. Hill* (1975), 34 Ill. App. 3d 193, 208.

■■■ Defendant's final contention, that the evidence was insufficient to prove his guilt beyond a reasonable doubt, is not meritorious. On this issue defendant's essential argument is that the State failed to prove the element of knowing possession beyond a reasonable doubt. As we have previously indicated the testimony of the police officers as to items discovered bearing the defendant's name was properly admitted, as well as Papineau's statement that the bedroom belonged to the defendant. Further, the State introduced the apartment lease which showed the names of the defendant and Papineau; there was testimony by the rental agent concerning defendant's possession of the premises; and the large quantity of contraband found in the apartment in various forms was a circumstance from which the jury could infer that defendant knew of the existence and presence of the items in the apartment. We conclude from the whole record that the defendant was proven guilty beyond a reasonable doubt.

The judgment is therefore affirmed.

Affirmed.

WOODWARD and NASH, JJ., concur.